_____

No. 96-2209
_____

United States of America,       *
                                  *
        Appellant,         *
                                  *  Appeal from the United States
     v.                    *  District Court for the
                                  *  Southern District of Iowa.
Virgil Owens,              *
                                  *
        Appellee.          *

_____

Submitted:  October 22, 1996

Filed:  November 29, 1996
_____

Before WOLLMAN, BRIGHT, and MAGILL, Circuit Judges.

_____

MAGILL, Circuit Judge.

This is an interlocutory appeal, pursuant to 18 U.S.C. § 3731 (1996), of a district court order suppressing evidence in a criminal trial. The defendant, Virgil Owens, is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (1996). Owens moved in the district court to suppress all the evidence seized from the vehicle in which he was a passenger during an investigatory stop. The district court granted his motion on April 17, 1996, and denied the government's application for reconsideration on May 3, 1996. Because we conclude that the investigatory stop did not violate Virgil Owens's Fourth Amendment rights, we reverse the district court's order.

During the early morning of September 21, 1994, an informant notified the police that a group of individuals, which included Owens, had checked into the Roadway Inn in Des Moines, Iowa. One member of the group asked for directions to a location known for heavy drug trafficking. The group was traveling in two vehicles, a Cadillac and a Ford minivan, both with Minnesota license plates. The police learned that the minivan was a rental vehicle and was rented to a person who had been arrested on drug charges in 1992. Police officers Michael Stueckrath and Mark Nagel were briefed on this information and were assigned to investigate this group's activities.

That afternoon, Officers Stueckrath and Nagel observed the group leave the Roadway Inn. The group used both vehicles and drove in tandem, with the minivan leading and the Cadillac following. Officer Stueckrath followed behind the Cadillac in an unmarked police car. While tailing the vehicles, he observed one of the occupants of the Cadillac hollowing out the inside of a cigar to make a "blunt." Blunts are often used to smoke marijuana; the hollowed out center is stuffed with marijuana and then lit. The excess tobacco from the cigar was thrown out of the window of the Cadillac and some of the tobacco landed on Officer Stueckrath's windshield.

Officer Stueckrath radioed for assistance shortly before the two vehicles pulled into the drive-through lane of a Burger King restaurant. At this point, the Cadillac was ahead of the minivan in the drive-through lane. Two police officers who had arrived on the scene identified themselves to the occupants of the Cadillac and the minivan as they emerged from the drive-through lane. The officers asked the drivers to pull into the adjoining parking lot so that the officers could talk with them. Both drivers complied.

Officer Stueckrath approached the Cadillac and identified himself as a police officer to the driver of the car. As Officer Stueckrath approached the car, he could see the blunt in the car ashtray. He asked the driver, Scott Davis, for permission to search the car. Davis consented. Davis then pulled a bag of marijuana out of his pants pocket. When Officer Stueckrath spotted the bag, he shouted to the other officers that he had found drugs.

Meanwhile, Officer Chris Mahlstadt approached the driver's side of the minivan. At this time, Sergeant Jerry Jones--standing on the passenger side of the minivan--heard Officer Stueckrath's announcement that drugs had been found. Officer Jones immediately asked the occupants of the minivan to exit the vehicle. When the defendant, Owens, exited the passenger side of the minivan, Sergeant Jones saw a 9mm gun on the floor between the door and the front passenger seat where Owens had been sitting. Sergeant Jones shouted "gun," and the other officers conducted patdown searches of all of the occupants of the vehicles.

Officer Nagel asked Clifton, the driver of the minivan, for permission to search the minivan. Clifton consented. When he searched the minivan, Officer Nagel found a gym bag with 9mm ammunition and legal documents addressed to Owens.

Defendant Owens is before the district court on the charge of being a felon in possession of a firearm. The district court granted his motion to suppress all the evidence obtained from the minivan on the ground that the stop of the minivan was unreasonable and was therefore prohibited by the Fourth Amendment. The government appeals this decision. We reverse.[1]

---

[1]Because of our decision in this case, we do not need to reach the appellee's other arguments regarding consent and standing. Accordingly, we decline to address these arguments.

When reviewing a district court's decision to suppress evidence seized during a warrantless investigatory stop, we must consider whether the police had reasonable suspicion of illegal activity justifying the warrantless search. See Ornelas v. United States, 116 S. Ct. 1657, 1663 (1996); see also Terry v. Ohio, 392 U.S. 1, 21-22 (1968) (To determine whether a certain police action, such as a warrantless stop, was unreasonable, we ask "would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" (internal quotations omitted)). The existence of reasonable suspicion is a question of law, which we review de novo. Ornelas, 116 S. Ct. at 1663.

Owens argues that the evidence seized from the minivan should be suppressed because the stop of the minivan was unreasonable and in violation of his Fourth Amendment rights. We disagree.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. The act of stopping an automobile and detaining its occupants constitutes a seizure. See Delaware v. Prouse, 440 U.S. 648, 653 (1979). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." Whren v. United States, 116 S. Ct. 1769, 1772 (1996).

A police officer may stop an automobile if he has "reasonable suspicion" that the occupant of the automobile is subject to seizure for violation of the law. Prouse, 440 U.S. at 663. An officer has reasonable suspicion sufficient to make a stop without a warrant if the police officer can point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21.

Based on the facts before us, we hold that the police officers had sufficient reasonable suspicion to stop the minivan.  Before the minivan was stopped, the officers knew of the following: (1) the occupants of the minivan and the Cadillac had arrived together at the motel early in the morning; (2) a member of the group had asked for directions to a part of town known for drug trafficking; (3) the minivan was rented in the name of a person who had been previously arrested in 1992 for possession of crack cocaine; (4) the group left the motel together; (5) the group drove its two vehicles in tandem; (6) Officer Stueckrath observed an occupant of the Cadillac making a blunt; and (7) the two vehicles went into the Burger King drive-through lane together. These facts would reasonably lead a prudent person, as it led the police officers in this case, to suspect that the entire group was acting in concert to achieve a criminal objective.

We do not hold today that a car can be stopped without a warrant merely because that car is driving in tandem with another vehicle whose occupants (of the latter vehicle) are reasonably suspected of criminal conduct; rather, it is one factor to be considered in determining whether reasonable suspicion exists.  See United States v. Ocampo, 937 F.2d 485, 490 (9th Cir. 1991) ("We have also recognized that tandem driving, though oftentimes explicable on entirely innocent grounds, may likewise indicate criminal activity.").[2]

Finally, we note that, consistent with the Fourth Amendment,

---

[2]Our consideration of the fact that the minivan was driving in tandem with the Cadillac is not contrary to Ybarra v. Illinois, 444 U.S. 85 (1979), in which the Supreme Court held that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." Id. at 91.  The minivan did not merely happen to be next to the Cadillac; the occupants of the minivan had been traveling with the occupants of the Cadillac at least from the time the group had checked into the Roadway Inn.  This is a far cry from the "mere propinquity" that concerned the Supreme Court in Ybarra.

police officers are empowered to stop people where doing so is reasonably necessary to secure the officers' own safety. See, e.g., Ybarra v. Illinois, 444 U.S. 85, 93 (1979) (Terry creates a narrow exception to the requirement of probable cause so that "a law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted."). At the time the officers stopped the Cadillac, they knew that the occupants of the minivan were the traveling companions of the occupants of the Cadillac. It was not unreasonable for the officers to believe that their safety could be threatened if they were unable to watch the occupants of the minivan while stopping the Cadillac. This is yet another factor that bolsters our conclusion that the officers' stop of the minivan did not offend the Fourth Amendment.

## III.

For the reasons discussed above, we reverse the decision of the district court and remand for trial on the merits.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.