# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-3878

_____

United States of America,                  *
                                            *
        Plaintiff-Appellee,                 *
                                            *
v.                                          *
                                            *
Robert Christopher Allegree,                *
                                            *
        Defendant-Appellant.                *

_____

No. 99-1339

_____

Appeals from the United States
District Court for the
Northern District of Iowa.

United States of America,                   *
                                            *
        Plaintiff-Appellee,                 *
                                            *
v.                                          *
                                            *
Jessica Evelyn Aldrich,                     *
                                            *
        Defendant-Appellant.                *

_____

Submitted: April 20, 1999

Filed: May 5, 1999

_____

Before MCMILLIAN, LOKEN, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Robert Christopher Allegree and Jessica Evelyn Aldrich pleaded guilty to possession with intent to distribute and aiding and abetting possession with intent to distribute approximately 231 grams of methamphetamine, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. Aldrich and Allegree both argue that the district court[1] erred by denying their motion to suppress evidence allegedly obtained after an illegal detention; Allegree also appeals his sentence. We affirm.

In the early morning hours of November 11, 1997, Allegree and Aldrich were driving along a highway in Grundy County, Iowa when a deputy sheriff stopped them at approximately 1:23 a.m. The officer told Allegree, who was driving, that he had stopped the car because it had blue headlights which are only permitted on emergency vehicles. See Iowa Code § 321.423(3). Allegree responded that the lights were purple rather than blue. The deputy asked to see identification from both occupants and registration papers for the vehicle. Allegree's license was too faded to read, and the registration indicated that the car was registered to someone other than Allegree or Aldrich. They told the deputy that the record owner was Aldrich's cousin and that Allegree had recently purchased the vehicle but was having problems getting the title. Allegree was unable to produce the record owner's phone number, and the deputy asked him to step back to his patrol car.

Once they reached the patrol car, the deputy asked Allegree where he and Aldrich were going. Allegree told him that they were going to the Waterloo hospital to see his grandmother who had been admitted earlier that day. The deputy then went back to the other car and asked Aldrich the same question. She said they were going to visit friends,

[1]The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa.

but as the officer was walking away she added, "Oh, yeah, and his grandmother's in the hospital."

The officer returned to the patrol car and continued to question Allegree. During this conversation he developed the impression that Allegree could be under the influence of some controlled substance because of his nervous behavior, bloodshot eyes, and pinpoint pupils. He asked Allegree to perform a number of field sobriety tests and noted a slight nystagmus in the right eye. Allegree explained that he had been taking some anti-inflammatory medication. In response to the deputy's questions, Allegree stated that his tattoos were unrelated to gang membership and denied that there was anything illegal in the car, including the large quantity of stereo equipment visible in the back seat. He also reported that he had previously been arrested for possession of a sawed-off shotgun and possession of a sixteenth ounce of methamphetamine.

Approximately fifteen minutes after the initial stop the deputy asked, "Do you have any problem with me searching your car?" Allegree answered, "Nope." The search uncovered methamphetamine in a black bag in the trunk and a cellophane brick of methamphetamine in the glove box. Aldrich claimed that the black bag belonged to her. Both denied any knowledge of the contents of the glove compartment. The two were placed under arrest, and the deputy made a closer inspection of the lights and discovered that there was a purple filter over the fog lights.

Aldrich and Allegree filed a motion to suppress the methamphetamine evidence seized during the search of the car. They conceded that the original stop was permissible under the Fourth Amendment, but argued that they had been detained unreasonably. They said the deputy should have checked the front lights as soon as Allegree told him they were purple and that they then could have left the scene without further investigation. The deputy instead checked their papers and asked a series of questions. The magistrate judge conducted an evidentiary hearing and recommended denial of the motion to suppress, and the district court adopted the report and

recommendation. Allegree and Aldrich then entered conditional pleas of guilty, preserving their right to appeal their suppression issue.

The district court subsequently found that Allegree qualified as a career offender under United States Sentencing Guidelines Manual ("U.S.S.G.") § 4B1.1, based on his prior convictions for second degree robbery and for possession of an offensive weapon, a sawed-off shotgun. The court found that both convictions were "crimes of violence" qualifying as the predicate for career offender status under U.S.S.G. § 4B1.1.

Allegree and Aldrich appeal the denial of their motion to suppress evidence, claiming that their detention beyond the initial interchange with the deputy was unreasonable under the Fourth Amendment, invalidating Allegree's consent to the search. Allegree also appeals his sentence, asserting that the district court erred in ruling that possession of a sawed-off shotgun was a crime of violence.

Our review of the district court's factual findings is for clear error, but the question of whether a Fourth Amendment violation occurred is considered de novo. See United States v. Martinez, 78 F.3d 399, 401 (8th Cir. 1996). Appellants have not challenged the factual findings made by the magistrate and adopted by the district court, but they challenge the legal conclusions in the district court. They concede that because the deputy sheriff reasonably believed that the vehicle had improper headlights, he was entitled to stop the car. See United States v. Johnson, 64 F.3d 1120, 1124 (8th Cir. 1995); United States v. Pereira-Munoz, 59 F.3d 788, 791 (8th Cir. 1995). The question is whether the detention of the vehicle and its occupants up to the point when consent was given was permissible under the Fourth Amendment. A reasonable investigation following a justifiable traffic stop may include asking for the driver's license and registration, asking the driver to sit in the patrol car, and asking about the driver's destination and purpose. See United States v. Ramos, 42 F.3d 1160, 1163 (8th Cir. 1994). If an officer's suspicions are aroused in the course of such an investigation, the officer is entitled to expand the scope of the stop to ask questions unrelated to the

4

original traffic offense, and consent given in the course of such questioning is valid so long as it is voluntary.  See Pereira-Munoz, 59 F.3d at 791.

Under the circumstances as they evolved, the deputy's questioning of Allegree and Aldrich was reasonable.  The deputy's suspicions were aroused by the information he was given after the stop, and the sequence of events heightened his suspicions.  First he saw that Allegree's driver's license was almost illegible and then learned the vehicle was registered to someone other than the occupants.  Next he perceived some divergence between the answers the two gave about the reason for their trip and observed signs of possible use of a controlled substance by Allegree.  Other details he noticed about the vehicle and the occupants led to further questions about the large amount of stereo equipment and Allegree's arrest record.  Only some fifteen minutes passed from the time of the stop to the search, and it appears from our review that each step of the deputy's investigation was justified by what had occurred or been observed before it.  Neither the stop nor the amount of time the deputy investigated before asking to search were unreasonable.  The detention was not illegal, and Allegree voluntarily consented to the search.  We conclude the district court did not err in denying the motion to suppress.

Allegree argues he should not have been sentenced as a career offender because his earlier conviction for possession of an offensive weapon was not a crime of violence within the meaning of U.S.S.G. § 4B1.2.  Allegree had been arrested in 1995 after a traffic stop; a search of his car had revealed a quantity of drugs and a shotgun with a 15.5 inch barrel.  He then pled guilty to possession of an offensive weapon and possession of a controlled substance, and a charge for felon in possession of a firearm was dismissed.  Allegree points out that the Sentencing Guidelines explicitly exclude *possession of a firearm by a felon* from the definition of crimes of violence, U.S.S.G. § 4B1.2 application note 1, and argues that there is no meaningful distinction between that offense and the offense of *possession of an offensive weapon*.  We review the sentencing court's factual determinations for clear error and its interpretation of the

5

Sentencing Guidelines de novo.  See United States v. Casey, 158 F.3d 993, 995 (8th Cir. 1998).

The reason Allegree's conviction for possession of an offensive weapon counts as a crime of violence is because of the type of weapon involved.  This distinguishes his offense from simple possession of a firearm by a felon.  The Sentencing Guidelines define a crime of violence to include any offense "punishable by imprisonment for a term exceeding one year, that . . . involves conduct that presents a serious potential risk of physical injury to another."  See U.S.S.G. § 4.B1.2(a).  Possession of a sawed-off shotgun qualifies under this definition because such weapons are inherently dangerous and lack usefulness except for violent and criminal purposes.  See United States v. Hayes, 7 F.3d 144, 145 (9th Cir. 1993); see also United States v. Fortes, 141 F.3d 1, 6-8 (1st Cir.) (finding possession of a sawed-off shotgun "conduct that presents a serious potential risk of physical injury to another" for purposes of the Armed Career Criminal Act), cert. denied 118 S. Ct. 2387 (1998).  The district court did not err in counting this conviction as a crime of violence under U.S.S.G. § 4B1.2.

Accordingly, we affirm the judgments of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

6