# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1495

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | Minnesota |
| Isaac Eugene Barlow, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  August 20, 2001

Filed:  October 22, 2002

_____

Before BYE, LAY, and JOHN R. GIBSON, Circuit Judges.

_____

BYE, Circuit Judge.

Following a conditional plea of guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922, Isaac E. Barlow appeals the district court's denial of his motion to suppress evidence seized during an investigatory stop of a car in which he was a passenger.  Barlow contends that the detention of the car unlawfully exceeded the scope of the stop.  For reasons stated below, we vacate the order denying the renewed motion to suppress evidence and remand for further proceedings.

# I

Between the early morning hours of 12:00 a.m. and 12:30 a.m. on July 28, 1997, Minneapolis Police Officer Kim Hedberg observed a Geo Tracker pass by as he exited a parking lot. The record indicates the occupants of the Tracker glanced at Officer Hedberg and were startled and surprised to see him. Officer Hedberg was in uniform and in a marked patrol car. The Tracker increased its speed and made a quick left turn in what appeared to be an attempt to evade Officer Hedberg. Officer Hedberg followed the Tracker into an alley and observed it pull over and park.

Officer Hedberg saw two passengers, both black males, exit the Tracker and walk in the direction of a private residence. Officer Hedberg drove by the Tracker. He noticed the driver was white with brown or blonde hair, but could not determine the driver's gender. Officer Hedberg then came upon the two men who had just exited the vehicle. He asked them whether they lived in that residence. They said they did, however, he did not see them enter it. Officer Hedberg did not ask any additional questions and exited the alley. He ran a computer check on the registration on the Tracker, whereupon he discovered the owner of the Tracker, a male, had an outstanding misdemeanor warrant.

Officer Hedberg decided to investigate whether the owner of the Tracker was present in the vehicle, so he returned to the alley. In so doing, Officer Hedberg observed the Tracker in motion, and also noticed that the same two men who had previously exited it, and who had told Officer Hedberg that they were headed toward their residence, were back in the Tracker. Officer Hedberg activated his light bar and initiated a stop. He approached the Tracker and discovered that the driver was a female. Officer Hedberg asked the driver for her license and she responded she did not have it with her. He then asked the driver to accompany him to his patrol car while he ran a computer check on her license. While in the patrol car, the driver told

Officer Hedberg that she knew the identity of the passenger seated in front, but she did not know the identity of the passenger seated in back.

Officer Hedberg returned to the Tracker to identify the passengers. When he approached the Tracker, he initially asked the passengers where they lived. The responses they provided conflicted with their earlier statements they had provided while in the alley. Both passengers were requested to exit the Tracker and produce identification. As soon as Barlow exited the Tracker, Officer Hedberg conducted a pat-down search for weapons and felt bullets in Barlow's back pocket. He removed the bullets from Barlow's pocket, placed him in handcuffs and in the patrol car. Thereafter, Officer Hedberg shined a flashlight into the Tracker, where, in plain view, he saw a firearm on the floor in the back seat where Barlow had been seated. Officer Hedberg seized the firearm and placed Barlow under arrest.

## II

Barlow concedes that the underlying basis for stopping the Tracker was valid. See United States v. Cortez, 449 U.S. 411, 417 n.2 (1981) ("[A]n officer may stop and question a person if there are reasonable grounds to believe that person is wanted for past criminal conduct."). But he contends that the officer exceeded the purpose of stopping the car—to determine whether the Tracker's owner, the subject of the outstanding warrant, was present in the car—and thus the seizure was illegal and the evidence obtained was tainted by that illegality.

Barlow filed two motions to suppress the evidence. His original motion to suppress was referred to a magistrate judge for a report and recommendation. The magistrate judge held an evidentiary hearing and ultimately recommended that Barlow's motion be denied. Barlow raised certain objections, but after conducting a de novo review, the district court likewise denied Barlow's motion to suppress. Subsequently, during his plea hearing, Barlow renewed his motion to suppress, after

the district court allowed him to make Defendant's Exhibit 10 part of the court's record.  The district court, once again, denied Barlow's motion to suppress.  In order to review the district court's judgment in full, we must review the original motion to suppress and the renewed motion to suppress separately.  In doing so, we review for clear error the facts supporting a district court's denial of a motion to suppress, and review de novo the legal conclusions based upon those facts.  See United States v. Perez, 200 F.3d 576, 579 (8th Cir. 2000) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).

## A.  Original Motion to Suppress

In adopting the magistrate judge's[1] report and recommendation, the district court found the initial stop of the Tracker to be valid based on the officer's reasonable suspicion that the occupants of the vehicle had been engaged in criminal activity.  See Terry v. Ohio, 392 U.S. 1, 25-31 (1968).  The district court also found the police officer justifiably expanded the scope of the investigation beyond the misdemeanor warrant which was the purpose of the initial stop.

Barlow argues that Officer Hedberg should have terminated the stop before asking the driver a single question.  According to Barlow, Officer Hedberg knew the subject of the misdemeanor warrant (the Tracker's owner) was a white male.  Yet Officer Hedberg had observed the Tracker's driver as being a white woman and its passengers being black males.  Barlow argues that because Officer Hedberg had no reason to suspect that any of the Tracker's occupants was the subject of the warrant, he lacked justification for asking questions and prolonging the stop.

---

[1]The Honorable John M. Mason, United States Magistrate Judge for the District of Minnesota.

Barlow's argument hinges upon his contention that Officer Hedberg knew *both* the *gender* and the *race* of the Tracker's owner when he executed the stop. The evidence, however, fails to substantiate Barlow's contention. The evidence presented to the magistrate judge at the hearing indicated that Officer Hedberg knew *only* the *gender* of the Tracker's owner.

During the evidentiary hearing, Officer Hedberg testified he knew only the Tracker's owner was a male. The prosecutor then asked Officer Hedberg whether he knew the owner's race. His answer was no, and further testified that the computer print-out did *not* provide the race of the Tracker's owner; rather, it only provided the gender, hair color and eye color. Barlow's attorney did not cross-examine Officer Hedberg on this issue, nor was he cross-examined about the contents of the computer print-out. In fact, the computer print-out, which contained the physical description of the owner, and did include race, was only marked as Defendant's Exhibit 10 during the evidentiary hearing. It was never admitted into evidence. Defendant's Exhibit 10, therefore, was not in the record.

In the report and recommendation, the magistrate judge noted the dearth of information Officer Hedberg possessed regarding the physical description of the Tracker's owner, stating:

> A registration typically reveals a brief description of the owner, however, during his testimony, Officer Hedberg was not asked about that description. The physical appearance of the owner remains unknown, *so the evidence does not disclose whether a reasonable officer would have reached a conclusion as to whether the male passengers might have been the owner of the car and the subject of the warrant*.

Report & Recommendation 3-4. The magistrate judge ultimately recommended Barlow's motion to suppress be denied. Barlow did not object[2] to the magistrate judge's aforementioned factual finding. Thus, while we normally review for clear error the facts supporting a district court's denial of a motion to suppress, the factual findings here will be reviewed only for plain error, because Barlow failed to object to this factual finding. See United States v. Looking, 156 F.3d 803, 809 (8th Cir. 1998).

Because the record was devoid of any evidence suggesting, much less demonstrating, Officer Hedberg knew the race of the owner when he stopped the Tracker, we cannot say the district court plainly erred. Barlow never raised nor argued the race issue. Consequently, since there was no evidence upon which the magistrate judge or the district court could possibly have found that Officer Hedberg knew the race of the owner when he stopped the Tracker, the district court did not err in finding Officer Hedberg had reasonable suspicion to believe the Tracker's owner may have been present as a passenger.

## B. Renewed Motion to Suppress

At his plea hearing, Barlow requested permission to make Defendant's Exhibit 10 part of the record. Barlow's attorney informed the district court the magistrate judge had essentially been presented with the contents of Defendant's Exhibit 10

---

[2]Barlow likely did not object to the magistrate judge's finding because his argument focused on the fact that Officer Hedberg knew the gender of the subject. Barlow argued that once Officer Hedberg knew the driver was not male, the continued detention of the Tracker was unlawful because any reasonable suspicion that supported the initial Terry stop dissipated at that point. Barlow's attorney failed to pay heed to Officer Hedberg's testimony that he stopped the Tracker in order to determine whether *any* of its occupants, not merely the driver, was the subject of the outstanding warrant. See Tr. of Evidentiary Hearing 42.

through testimony, and therefore the exhibit itself should be added to the record to assist in Barlow's eventual appeal. With the assurance of Barlow's attorney that the addition of the exhibit would not prompt a remand on appeal, the district court received Exhibit 10 into the record. The government did not object to Defendant's Exhibit 10 being made part of the record.

Barlow then sought to renew his motion to suppress evidence. The district court allowed Barlow to renew his motion, and considered it as if Barlow had moved the court to reconsider its earlier ruling. The district court believed the addition of Exhibit 10 to the record did not alter the facts underpinning the original suppression motion because Barlow's attorney expressly represented that "Judge Mason had before him, in essence, the contents of the exhibit." Tr. of Plea Hearing 13. Consequently, the district court summarily denied the renewed motion based on this representation.

The contents of Defendant's Exhibit 10, however, were not before the magistrate judge, and the addition of it to the record does alter the facts underpinning the original suppression motion. We are mindful the district court expressed concern that making Defendant's Exhibit 10 part of the record would alter the court of appeals' view of the suppression ruling.[3] Although we sympathize with the district court, and believe the district court *should* be entitled to rely on an attorney's representation, we cannot, however, overlook the fact of its existence. This is especially true because Barlow's attorney articulated the basis for making the exhibit part of the record, specifically stating that Officer Hedberg knew both the gender and the race of the

---

[3]The district court stated to Barlow's attorney, "[the] reason I am raising it, is there any question if I accept the plea with this condition in it, the reservation of the right to appeal, that that appeal is going to go down to the Eighth Circuit and the Eighth Circuit is going to say, let's send it back and see what the district court or the magistrate judge is going to say about that issue now that that exhibit is in? That's the only concern I have." See Tr. of Plea Hearing 12-13.

Tracker's owner when he effectuated the stop.[4]  The exhibit and the argument have been preserved for appeal.

Defendant's Exhibit 10 contains material information which arguably casts doubt on the denial of Barlow's original motion to suppress.  But the district court did not have an adequate opportunity to consider the exhibit, and to correct any mistake if one was made in the first instance.  Cf. United States v. Longmire, 761 F.2d 411, 420-21 (7th Cir. 1985) ("Unless the district court is given an opportunity to correct the error, an appellate court cannot review evidence presented at trial which casts doubt upon a pre-trial suppression motion."); Masiello v. United States, 304 F.2d 399, 400-02 (D.C. Cir. 1962) (vacating the judgment and remanding because the evidence that might support the trial judge's determination emerged after the conclusion of the suppression hearing (during the trial) and conflicted directly with testimony adduced at the pretrial hearing).  In fact, the district court was deprived of the opportunity to consider Defendant's Exhibit 10 because of the attorney's representation, as evidenced by its summary denial of Barlow's renewed motion to suppress.

### III.

Neither the magistrate judge nor the district court made a credibility finding concerning Officer Hedberg's testimony as it pertains to the issue of race.  Defendant's Exhibit 10 bears directly upon Officer's Hedberg's credibility.  Therefore,

---

[4]Barlow's attorney stated "[T]he only information that is relevant to the suppression issue is the fact that on the warrant it does set forth the race of the person who was wanted on the misdemeanor warrant out of, I believe it's Anoka County, is white and so there was the testimony by the officer that the driver of the vehicle was white; couldn't determine gender.  The two passengers were black and I believe that's relevant to the issue under consideration.  And as part of the preservation of rights on appeal, I would renew my motion to suppress based on the fact that at the point the officer realized that the white driver was a woman, that any reasonable suspicions that would support a Terry stop dissipated at that point." See Tr. of Plea Hearing 11-12.

we vacate the district court's order denying the renewed motion to suppress evidence and remand to allow the district court the opportunity to reconsider Barlow's renewed motion to suppress evidence in light of Defendant's Exhibit 10 and all other evidence contained in the record.

LAY, Circuit Judge, concurring specially.

I concur in Judge Bye's majority opinion remanding this case to the district court. I do so solely to provide a majority in the judgment of this court. I cannot endorse Judge Gibson's dissenting analysis for several reasons.

The first and primary reason is that this case in its ultimate disposition should be affirmed. Any other analytical view fails to give a reasonable and common sense approach to an officer carrying out his duties under the law. There is no question in this case that the officer had a reasonable basis for pulling over the Tracker to determine whether the owner of the vehicle was driving the car or was a passenger in the car. The owner was wanted on a misdemeanor warrant and was a fugitive at the time. After the officer had determined that the owner of the vehicle was not in the car, it was reasonable for him, in view of the fact that the owner of the vehicle was a fugitive, to inquire of the driver as to her license. I find nothing meritorious in engaging in a discussion as to whether he had a right to do so (which I feel that he did), but simply point out that the driver of the car responded to him that her license was not in her possession but was at home. The driver of the car did not object to the officer asking such a question nor did she object to his taking her back to his vehicle in order to verify her statement.

There is no question that the defendant in the present case, Barlow, as a passenger in the car, had no standing to object to any question the officer might address to the driver. Once it was determined that the driver was in violation of Minnesota law by not having her license in her possession, the officer was certainly

within his duty to detain her. He could not allow her to drive the car. She had no license and, under the circumstances, no reasonable police officer would allow an unlicensed driver to drive the car away from the scene of the stop. Barlow had no standing to protest the officer questioning the driver. Additionally, once the officer determined that there was a violation of the Minnesota statute, it was reasonable for the officer to ask the two passengers to remove themselves from the car, and for purposes of the officer's safety, to submit them to a pat down.

The courts are always concerned about intrusion into the civil rights of citizens, but at the same time the courts should recognize the officer's duty, under given circumstances, to make certain that no other crime is taking place. I am confident that any reasonable officer would have done the same as Officer Hedberg in asking the driver for her license, particularly in light of the fact that she was driving a vehicle owned by a fugitive.

Considering the entirety of what occurred at the scene, I feel that the end result of this case should be a denial of the motion to suppress, and the conviction be allowed to stand.

However, based upon my concurrence with Judge Bye's opinion, it will allow the matter to go back to the district court for a complete review of the record and facts by the district court, which did not take place in the first instance. Once that record has been verified and the district court has had an opportunity to review the matter again, I am confident that the final result will be a denial of the motion to suppress either by the district court or certainly by this court in review.

JOHN R.GIBSON, Circuit Judge, dissenting.

I dissent.

The court errs today in ignoring the objective standard set out in Terry v. Ohio, 392 U.S. 1 (1968), that the information available to the officer at the moment of the seizure is the determining issue in our analysis. The record demonstrates that the facts available to Officer Hedberg were that the owner of the Tracker was white, whereas Barlow was African-American. Therefore, Barlow could not be the owner. The court remands for credibility assessment on an issue not relevant under Terry. I would reverse and instruct the district judge to set aside the conviction.

Police may not stop a car to check the driver's license and registration without a reasonable, articulable suspicion that the driver is unlicensed, that the car is unregistered, or that the car or its occupants are otherwise subject to seizure for violation of the law. Delaware v. Prouse, 440 U.S. 648, 663 (1979). An officer who has such a reasonable, articulable suspicion may stop the car long enough to conduct an investigation that is "reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001) (quoting Terry v. Ohio, 392 U.S. 1, 20 (1968)). Accord Florida v. Royer, 460 U.S. 491, 500 (1983). However, the intrusion must last no longer than is necessary to effectuate the purpose of the stop, and the officer must use the least intrusive means available to dispel his suspicion quickly. Royer, 460 U.S. at 500; Jones, 269 F.3d at 924. Once the suspicion that justified the stop has been shown to be baseless, the officer may not detain the car or its occupants unless something else has happened to generate another ground for detention. Jones, 269 F.3d at 925; United States v. Watts, 7 F.3d 122, 126 (8th Cir. 1993) ("[A]n investigative stop must cease once reasonable suspicion or probable cause dissipates."). Further detention after the original reason for the stop has been achieved (without consent or some intervening ground having arisen) violates the detainee's right to be free from unreasonable seizure. Jones, 269 F.3d at 929; United States v. Belcher, 288 F.3d 1068, 1070 (8th Cir. 2002); United States v. Beck, 140 F.3d 1129, 1134 (8th Cir. 1998).

The validity of the seizure of the gun, and therefore the outcome of this appeal, hinges on the propriety of Hedberg's actions in the short time between his seeing that the driver was a woman and receiving the answer that she did not have her driver's license with her. Up until the time that Hedberg saw the driver was a woman, he could not tell who was driving the car and he had reasonable grounds to suspect that it might be a person who was wanted on a misdemeanor warrant. If Hedberg was justified in asking for the license, after the driver said she did not have her license, Hedberg would have been justified in detaining her long enough to find out whether she was in fact a licensed driver. Each subsequent step of the investigation was at least arguably justified by what came before. Therefore, the crucial question in this case is whether Hedberg was obliged to let the car go once he saw that the driver did not match the description of the person wanted for the misdemeanor.

I.

The government seeks to justify Hedberg's action in asking the driver for her driver's license after he saw she could not be the owner of the Tracker by arguing that Hedberg could have thought one of the passengers was the owner. Hedberg never claimed that he thought one of the passengers might be the owner. At the suppression hearing he said only that he was investigating whether the driver might be the person wanted on the warrant:

> I couldn't tell at the time, you know, whether it was a male or female driver in the vehicle. . . . I was going to go back to the alley and ask the person that was driving whether they were the listed owner or not. . . .

Later, he repeated this reason, and then added that he wanted to investigate why the passengers were back in the car if they had just been dropped off at home.[5]

---

[5]The government does not contend that the passengers' presence back in the car after saying they lived at the house was a reasonable ground for stopping the car. Nor

-12-

Q: And why did you initiate the traffic stop at that time?
A: Well, number one, I didn't know who was actually driving the vehicle. I knew it was a Caucasian. I thought maybe it was the person that had the listed warrant, that and the answer that I got from the two males, stating that they lived there. They weren't in the alley very long.

On cross examination, Barlow's attorney asked and Hedberg answered:

Q: And it was when that came back as a misdemeanor warrant for a Mr. Peterson that you then decided to go back and see whether he was driving the car?
A: I was going to go back and see whether Mr. Peterson was in the car.

The actual chain of events also demonstrates that Officer Hedberg was focused on the driver, not the passengers, since he first asked the driver for identification and only returned to question the passengers after the driver had told him she did not know one of her passengers.

I recognize that Officer Hedberg's subjective intent is not determinative in deciding whether the stop was reasonable, Whren v. United States, 517 U.S. 806, 813 (1996), but in this case the evidence at the hearing followed the officer's train of thought, which was that the driver, not the passengers, might be the subject of the warrant. Neither the prosecutor nor defense counsel explored whether Hedberg had reasonable grounds to believe one of the passengers might be the owner of the Tracker, and Hedberg never stated that he suspected the passengers, nor gave reasonable grounds for any such suspicion. As Barlow now points out, both passengers were black, and the owner of the Tracker was listed as white on the computer information that alerted Hedberg to the existence of the misdemeanor warrant. Deciding whether the government can justify the detention of the car and

---

does the government contend that Hedberg had any reason to suspect the car was stolen; his computer report on the car indicated it had not been reported stolen.

its occupants based on reasonable suspicion that one of the passengers was the owner requires us to determine whether the record evidence would support such a suspicion.

Because at the suppression hearing no one focused on whether Hedberg suspected one of the passengers of being the owner, Hedberg's testimony is only obliquely relevant to whether he had facts in his possession that would have supported such a suspicion. At the hearing, the prosecutor asked and Hedberg answered:

> Q: What information did you get from the listing on your computer?
> A: It came back that the listed owner had a misdemeanor warrant. And it was listed to a male, and I couldn't tell at the time, you know, whether it was a male or female driver in the vehicle.
> Q: Did the listing give you a race of the person who was the owner, do you know that?
> A: No, not with the listing it doesn't. It just gives you the eye color and the hair color.

Based on this testimony, the magistrate judge stated that the record was inadequate to support a conclusion that Hedberg had grounds for reasonable suspicion that one of the passengers was the owner:

> Officer Hedberg stopped the vehicle. As he approached, he noticed that the driver was a woman and could not be the subject of the misdemeanor warrant. (A registration typically reveals a brief description of the owner, however, during his testimony, Officer Hedberg was not asked about that description. The physical appearance of the owner remains unknown, so the evidence does not disclose whether a reasonable officer would have reached a conclusion as to whether the male passengers might have been the owner of the car and the subject of the warrant.)

-14-

The magistrate judge therefore did not base his recommendation on the theory that Hedberg had grounds to investigate the passengers, but instead relied on a general rule that an officer who has reasonable grounds to initiate a traffic stop may ask to see the driver's license, relying on United States v. Allegree, 175 F.3d 648, 650 (8th Cir. 1999).

However, at the plea hearing, Barlow's counsel renewed the motion to suppress, now based on the theory that the warrant information showed that the owner of the Tracker was white and so the two black passengers could not be suspects. To preserve a record supporting this theory, Barlow's counsel moved to introduce Exhibit 10, a print-out of the information Hedberg received by computer that night. Barlow's counsel had marked and used Exhibit 10 in her cross examination of Hedberg at the suppression hearing, but had not introduced it into evidence. At the plea hearing, counsel assured the court that the substance of Exhibit 10 had been before the magistrate judge at the suppression hearing by virtue of her cross examination. Based on this assurance and the government's agreement to admission of the exhibit, the court allowed Exhibit 10 to be made part of the record, but denied the renewed motion to suppress.

Exhibit 10 was used at the suppression hearing to elicit Hedberg's testimony that he knew that the owner of the Tracker was a male and that he recognized as he approached the car that the driver did not match the description of the owner. Contrary to Barlow's counsel's assertion to the district court that the substance of Exhibit 10 was before the magistrate judge, she now contends that the crucial part of Exhibit 10 is that it shows the owner of the Tracker was white.[6] This was not brought

---

[6]The paragraph of Exhibit 10 that first reveals the existence of a misdemeanor warrant is as follows:
   From: CJIS  To: 467 #960445/04 07/28/1997 00:12:43 CDT
   +MH2 1 1730 4066 1 MPA MPA M 3 B 40 40 40 A4
   1 2 67X MPA 4 JUL 28 1997 00:11:26 MN02711L1

out in testimony before the magistrate judge by counsel for either side. To the contrary, Hedberg testified on direct examination that the computer information did not show race, although he said it did show hair and eye color.

On this record, there are two reasons why the government has failed to establish that Hedberg had reasonable grounds to suspect the passengers were the owner of the Tracker. First, at the suppression hearing, the government failed to prove the facts to support the conclusion it wants us to draw. The magistrate judge observed that the government had not asked Hedberg about the registration description of the owner. The magistrate judge remarked, "[T]he evidence does not disclose whether a reasonable officer would have reached a conclusion as to whether the male passengers might have been the owner of the car and the subject of the warrant." Accordingly, the magistrate recommended no finding of fact that Hedberg was unaware that the owner of the car was white and made no legal conclusion that Hedberg could reasonably have suspected one of the passengers was the owner of the car.

The record at the suppression hearing would have supported no such finding or conclusion. Hedberg testified at the hearing that the computer misdemeanor listing

---

IMMEDIATELY CONFIRM RECORD WITH ORI
SCR/100.MIN/992083. **RTY/MISDMNR**.KAP/Y. ORI/MN08200W1.
NAM/PETERSON, JOHNATHAN TAYLOR.DOB/090375.
SEX/M. **RAC/W**. HGT/510. WGT/200. EYE/BLU.HAI/XXX.
OFF/M4199.BND/500.
**MIS/PUBLIC CONSUMPTION, UNDERAGE CONSUMPTION.**
OCA/96028021. WNO/96028021.DOW/100996.
DRE/101596. DLU/101596. TMR/WCZ.
PIK/MN.

(Emphasis added).

did not state the race of the owner, which in fact was incorrect. However, Hedberg never said that he did not know whether he was looking for a white person or a black person. No one asked him this question, because the hearing testimony only focused on the driver, who was white. As the magistrate judge surmised even without seeing Exhibit 10 ("A registration typically reveals a brief description of the owner. . . ."), the computer database that Hedberg drew on could be expected to include some kind of description of the person wanted for the misdemeanor. Hedberg said the computer misdemeanor entry showed hair and eye color, which might have ruled out a black suspect, although no one questioned Hedberg about this. Moreover, Hedberg did not behave as if he thought the passengers might be the owner of the Tracker; he did not ask them for their driver's licenses. Instead, he focused solely upon the white driver of the car, leading her to the squad car while he left the passengers unattended in the Tracker. His focus on the driver supports the inference that he was looking for a white person. With these facts in the record suggesting that Hedberg likely knew he was looking for a white person, it became incumbent on the government to show he had reason to think one of the passengers was the warrant suspect. The government did not do this.

Second, the addition of Exhibit 10 to the record after the suppression hearing, which the government agreed to, shows conclusively that there was no reasonable ground to suspect one of the passengers was the warrant suspect. Regardless of what Hedberg would have said he knew about the warrant suspect's race if anyone had asked him at the hearing, there is undisputed evidence that the computer report which listed the warrant also showed the warrant suspect was white. In determining whether a stop was reasonable, the court looks at the facts available to the officer carrying out the stop:

> [I]n making [the reasonableness] assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man

-17-

of reasonable caution in the belief" that the action taken was appropriate?

Terry v. Ohio, 392 U.S. 1, 21-22 (1968). Accord Scott v. United States, 436 U.S. 128, 137 (1978); United States v. Owens, 101 F.3d 559, 561 (8th Cir. 1996). The computer transmission that gave Hedberg the information that there was a misdemeanor warrant on the owner of the Tracker also listed the owner's race as white.

Officer Hedberg agreed at the suppression hearing that Exhibit 10 was a print-out of his calls that night, and he identified the time of the first call as twelve minutes and thirty-three seconds after midnight, which corresponds to the heading on Exhibit 10. Counsel directed his attention to Exhibit 10 and he said, "That looks like what would have come back on the computer." He testified that based on the information about the outstanding warrant, he decided to see if the subject of the warrant was in the car.

The transmission that was before Officer Hedberg informing him that the owner had a misdemeanor warrant outstanding also contained entries showing the owner's race was white and his eyes were blue.[7] The race information was two lines away from, and in between, the entries showing the existence of the warrant.

The record leaves no doubt that Hedberg had before him information showing the suspect was white. He knew the passengers were black. Therefore, the government has not established that Hedberg had reasonable grounds to suspect either of the passengers might be the person described in the warrant.

---

[7]The text of the computer transmission is set out at note 2, supra.

-18-

II.

The government argues that under United States v. Allegree, 175 F.3d 648, 650 (8th Cir. 1999), an officer who has reasonable suspicion sufficient to justify a traffic stop may, as a matter of course, ask for identification from the driver and all passengers. I conclude that this case is unlike Allegree and that the detention past the point at which the officer's suspicions were dispelled was unreasonable.

In Allegree, a police officer stopped a car because he thought it had blue headlights, which were only permitted on emergency vehicles under state law. The officer approached and told the driver why he had stopped him; the driver replied that the headlights were purple, not blue. The officer nevertheless asked to see identification for each of the occupants of the car and registration papers for the car. The stop eventually led to the discovery of methamphetamine in the car, and the driver and passenger moved to suppress the evidence, arguing that the detention continued beyond the proper scope of the stop. We held that the investigation was reasonably related to the purpose of the stop: "A reasonable investigation following a justifiable traffic stop may include asking for the driver's license and registration, asking the driver to sit in the patrol car, and asking about the driver's destination and purpose." 175 F.3d at 650. Although this statement is eminently reasonable in the ordinary traffic violation situation, in which it will take some amount of contact with the detainees to address the reasons for the stop, see generally Maryland v. Wilson, 519 U.S. 408 (1997); United States v. Jones, 269 F.3d 919, 924-25 (8th Cir. 2001), this case was not a traffic violation stop. The reasoning of the traffic violation cases does not apply to the situation in this case in which the officer saw as soon as he approached the car that the driver was not the person he suspected she might be. In Allegree the driver told the officer that the light was purple rather than blue, but the officer could reasonably believe it proper to check this out for himself, rather than just taking the driver's word for it. This made appropriate the preliminary precautions that officers routinely carry out in traffic violation stops, such as asking for

identification. See United States v. Ramos, 42 F.3d 1160, 1163 (8th Cir.1994); United States v. Beck, 140 F.3d 1129, 1134 (8th Cir. 1998). Here, on the other hand, the officer had no need for further investigation to dispel his original suspicions. This case is analogous to the situation in United States v. McSwain, 29 F.3d 558 (10th Cir. 1994), in which a trooper stopped a car because he suspected the registration sticker had expired. Once the car was stopped, the trooper saw that the sticker had not expired. He nevertheless asked for identification. The Tenth Circuit held that the continued detention was unconstitutional because, before ever speaking to the driver, the trooper had completely resolved the question that prompted him to stop the car. 29 F.3d at 561. Similarly, in this case there was no viable reason to detain the car any longer, and Officer Hedberg should have let the Tracker continue on its way.

Accordingly, I can find no reason justifying Officer Hedberg's action in demanding the driver's license. The discovery of the evidence flowed from an unreasonable detention, and I would reverse the district court's denial of the motion to suppress evidence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-20-