# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 03-2741

————————

United States of America,        *
           *

       Appellee,     *
           *  Appeal from the United

    v.           *  States District Court for the
           *  Northern District of Iowa.

Timothy Warner Hurt,     *
           *

       Appellant.    *

————————

Submitted: February 9, 2004
Filed: July 14, 2004

————————

Before MORRIS SHEPPARD ARNOLD, HANSEN, and SMITH, Circuit Judges.

————————

MORRIS SHEPPARD ARNOLD, Circuit Judge.

After the district court[1] denied his motion to suppress evidence, Timothy Hurt entered a conditional plea of guilty to conspiring to manufacture and attempting to manufacture methamphetamine, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846, and was sentenced to 120 months in prison. He appeals the denial of his motion to suppress, and we affirm.

———————————————

[1] The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, adopting the report and recommendations of the Honorable John A. Jarvey, Chief Magistrate Judge, United States District Court for the Northern District of Iowa. *See* 28 U.S.C. § 636(b)(1)(B).

# I.

The following facts were found by the district court. In the early morning hours in Rowley, Iowa, police officers were conducting surveillance at the FJ Krob Company, a distributor of anhydrous ammonia (a precursor chemical for making methamphetamine). About 1:30 a.m., one of the officers saw an individual attempting to steal the chemical from a tank on the FJ Krob property and took him into custody. The police then noticed someone parked in a van nearby, questioned him briefly, and allowed him to leave because they were unable to connect him with the attempted theft. But after the van left the area, the police located another man, who admitted that he and the driver of the van had been involved in the attempt to steal the anhydrous ammonia.

Shortly after 3:00 a.m., one of the officers called Detective Phippen of the Benton County Sheriff's department to the scene of the attempted theft. The detective had extensive experience in controlled substance investigations and particularly in investigations of clandestine laboratories. When Detective Phippen arrived at FJ Krob, the other officers explained to him what had occurred at the scene before he arrived.

While standing on the FJ Krob property some time between 3:30 and 4:00 a.m., the detective noticed a light-colored vehicle traveling westbound on County Road D47. As the car approached it slowed to less than 25 miles per hour, and Detective Phippen thought that it was going to turn into the FJ Krob property. The detective had left the headlights of his vehicle on, and, at about the time that the headlights could be seen by westbound traffic on County Road D47, the car sped up and continued down the road. FJ Krob is located on the eastern edge of Rowley near the point at which the westbound highway traffic is required to slow down from 55 miles per hour to 25 miles per hour.

In Detective Phippen's experience, it was common for anhydrous ammonia thieves to be dropped off in rural areas where these tanks exist and to be picked up later after the theft occurred. Detective Phippen decided to follow the car to get a license plate number. As he got on the westbound highway, he could not see the taillights of the car that had driven by. The district court found that Detective Phippen sped up to 70 to 75 miles per hour for two miles "to catch up with the car," and "spotted the vehicle turning south on state Highway 150." The detective called in the car's license plate, and he discovered that it belonged to someone in a town immediately adjacent to the city where the third suspect in the attempted anhydrous-ammonia theft lived. Detective Phippen was close enough to the vehicle when it turned onto Highway 150 to determine that the driver was a man, but he did not observe a passenger at that time.

Detective Phippen stopped the car. The driver (Mr. Hurt) was not the individual who was in the van earlier, but he was arrested because he was driving with a suspended license. Upon approaching Mr. Hurt's passenger, who was crouched down in the seat, Detective Phippen smelled a strong odor of ether and saw starting fluid cans on the car floor near the passenger. During the stop, the passenger dropped a baggie containing stripped lithium batteries, and he was arrested. The passenger compartment of the vehicle was searched incident to the arrests, and other materials used in the manufacture of methamphetamine were uncovered.

## II.

Mr. Hurt contends that the stop of the vehicle that he was driving violated the fourth amendment. Generally, we review the facts found by a district court in ruling on a motion to suppress for clear error, and we review the court's legal conclusions *de novo*. *See United States v. Barlow*, 308 F.3d 895, 898-99 (8th Cir. 2002). But when a defendant fails to object to a preliminary factual finding of a magistrate judge and the district court adopts it, we review that factual finding for plain error only. *See id.* at 899.

-3-

We thus review for plain error Mr. Hurt's contention, raised for the first time on appeal, that the district court erred in adopting the magistrate's finding that the car that Detective Phippen stopped was the same vehicle that slowed in front of FJ Krob. Although there were gravel roads from which another car could have exited or entered County Road D47 after passing FJ Krob, Detective Phippen testified that traffic was light at that time of the morning in this rural area and from the time that he entered the county road and proceeded westbound until he stopped Mr. Hurt, he saw no other vehicles ahead of him. Because we conclude that there was sufficient evidence to support a finding that the vehicle that Detective Phippen stopped was the one that had slowed in front of FJ Krob, we conclude that the district court's finding was not an "obvious" error that affected the defendant's substantial rights. *See United States v. Kamerud*, 326 F.3d 1008, 1013 (8th Cir. 2003), *cert. denied*, 124 S. Ct. 969 (2003).

Before Detective Phippen could legally stop Mr. Hurt, he was required to have a reasonable and articulable suspicion that criminal activity was afoot. *See Terry v. Ohio*, 392 U.S. 1, 30-31 (1968); *United States v. Thomas*, 249 F.3d 725, 728 (8th Cir. 2001). "[R]easonable suspicion" is " 'a particularized and objective basis' for suspecting the person stopped of criminal activity." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). To determine whether there was reasonable suspicion to support the stop, we look at the "totality of the circumstances, in light of [Detective Phippen's] experience," *United States v. Dodson,* 109 F.3d 486, 488 (8th Cir. 1997).

In support of his contention that Detective Phippen acted on the basis of a "hunch," Mr. Hurt notes that the detective stopped a car, not a van. But Detective Phippen explained that since the police had already identified the van, he expected the driver to use a different vehicle when he returned to the scene. Mr. Hurt next notes that about two hours passed between the time of the attempted theft and when the car passed FJ Krob, and that Detective Phippen testified that he did not recall a

situation where two hours passed between an anhydrous ammonia theft and the driver's return. But we think it reasonable that a driver would delay returning to a scene where the police had been present, and we also note that additional time might be needed when the driver has to obtain another vehicle. Finally, Mr. Hurt directs us to Detective Phippen's testimony that he did not expect the van driver to return to precisely the same location where he had been seen earlier but rather to try to pick up the other individuals somewhere in "the area." Although we believe that the detective's testimony does make this a closer case, we think that the other circumstances support the validity of the stop.

We conclude that there was "a particularized and objective basis" for Detective Phippen to suspect the driver of the vehicle that he stopped of criminal activity. The detective, based on his experience and training, expected the driver to return to pick up the other participants in the attempted theft since the driver did not know that they had been arrested. And Detective Phippen also anticipated that when the driver returned he would be in a different vehicle because the police could identify the van as having been at the scene earlier. We do not believe that Detective Phippen was required to stop looking for the driver after two hours had passed. And we think that Detective Phippen had reason to follow the car that arrived at the location of the recent attempted anhydrous-ammonia theft in the middle of the night in a rural area, slowed to the point where it appeared that it was going to turn onto the property, and then sped up and left the area when it reached the point where its driver could see the headlights of the detective's car. In addition to these supporting facts, Detective Phippen knew before he stopped the vehicle that the driver was male and that the vehicle was registered to someone from a town just north of where the suspect that he was looking for was from. We hold that based upon all of the circumstances surrounding this stop that Detective Phippen had reasonable suspicion that the driver of the car had committed a crime, and therefore the stop did not violate the fourth amendment.

Accordingly, we affirm the district court's order denying Mr. Hurt's motion to suppress.

_____