# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3259

_____

| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Andrew Anthony Belcher, | * |
| | * |
| Appellant. | * |

Appeals from the United States
District Court for the Western
District of Arkansas.

_____

No. 01-3524

_____

| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Garfield Anthony Walters, | * |
| | * |
| Appellant. | * |

_____

Submitted: March 12, 2002

Filed: May 1, 2002

_____

Before MCMILLIAN, HEANEY and MORRIS SHEPPARD ARNOLD, Circuit
   Judges.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

After Andrew Walters and Garfield Belcher's truck stopped at a weigh station, Sergeant Tim Culver of the Arkansas Highway Police asked to review their log book and to see their bills of lading. Upon reviewing the log book, Sergeant Culver pressed them again for their bills of lading, but they gave evasive responses, finally admitting that they did not have any. Sergeant Culver then inquired about their prospects for picking up a load, and he found suspicious their explanation that they were headed to Little Rock to call a broker about one. When Sergeant Culver requested permission to search the truck, the defendants refused, whereupon he asked for a dog to be brought to the scene. After the dog alerted by scratching the driver's door and the rear of the truck, Sergeant Culver and another officer searched the truck and found almost 1400 pounds of marijuana.

The defendants were charged with aiding and abetting the possession of marijuana with the intent to distribute it. *See* 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2(a). The district court denied the defendants' motion to suppress the marijuana found in the truck, and they then entered conditional guilty pleas under Fed. R. Crim. P. 11(a)(2), reserving their right to appeal the ruling on the suppression motion. After sentencing, the defendants filed this appeal contending that the police officers' search violated the fourth amendment. Mr. Walters also asserts that he was incorrectly sentenced. We reverse the district court's order denying the defendants' motion to suppress.

I.

The district court's determination that a search was reasonable under the fourth amendment is reviewed *de novo*. *See United States v. Carrate*, 122 F.3d 666, 668

(8th Cir. 1997)*; United States v. Dodson*, 109 F.3d 486, 488 (8th Cir. 1997). The appellants concede that Sergeant Culver was justified in stopping their truck under the so-called "regulatory search exception" to the fourth amendment. *See New York v. Burger*, 482 U.S. 691, 703 (1987). The issue before us is whether the trooper's actions following the stop were constitutional.

Under the Arkansas Motor Carrier Act, officers may stop and inspect carriers to determine whether the carrier and the carrier's operator are in compliance with rules and regulations "with respect to safety of operations and equipment," Ark. Code Ann. § 23-13-217(c)(1)(A) and (B). They may inspect documents that the carrier's operator must carry, including but not limited to duty status and service records. *See* Ark. Code Ann. § 23-13-217(c)(1)(A). The statute, however, permits officers to ask for and inspect bills of lading only "[u]pon reasonable belief that any motor vehicle is being operated in violation" of Arkansas's regulations. *See* Ark. Code Ann. § 23-13-217(d)(2). Sergeant Culver, as the government concedes, told Mr. Walters that he wanted to see the truck's bills of lading, log book, and the driver's license as soon as Mr. Walters went inside the weigh station. But at this point Sergeant Culver had no legal justification for asking for bills of lading because he had no grounds for believing that the truck was not in compliance with Arkansas's regulations. His request therefore violated the terms of the regulatory statute.

Sergeant Culver asked Mr. Walters for the bills of lading for a second time upon inspecting the log book that showed that the truck had been off duty in Phoenix, Arizona, for the previous week. The government contends that the fact that the truck was not in service for one week and the fact that it was from out of town gave rise to a suspicion that it was in violation of the Arkansas regulations. But in our judgment, these facts do not give rise to any inference that the truck itself was unsafe, or that it was carrying goods unauthorized by the regulations, or that the operators did not have the required documentation. In sum, Sergeant Culver's second inquiry for the bills of lading, like his first one, was not based upon reasonable suspicion that the truck

-3-

was being operated in violation of Arkansas law. His request once again exceeded what the relevant regulatory statute allowed.

The government would have us analyze this case under *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968), contending that once we conclude that an initial traffic stop is justified, the question becomes whether an officer's later actions are reasonably related to the circumstances justifying the initial stop. We express some doubt as to whether *Terry* is apposite when an officer exceeds the scope of a regulatory statute during a regulatory stop, but we believe, in any case, that Sergeant Culver's inquiries were not reasonable under *Terry* and hence the detention of the defendants' truck after the purposes of the stop had been satisfied was unconstitutional. *See United States v. Jones*, 269 F.3d 919, 929 (8th Cir. 2001).

As an initial matter, we note that state law "can be relevant in determining what is reasonable under the Fourth Amendment." *Bissonette v. Haig*, 800 F.2d 812, 815 (8th Cir. 1986) (*en banc*), *aff'd by operation of law*, 485 U.S. 264 (1988). While it is true that the "Constitution is conceptually and practically distinct" from any statute, the reasonableness of government action must be judged "against a background or matrix of societal expectations and assumptions." *Id.* at 814. Statutes, which are "*prima facie* evidence of what society as a whole regards as reasonable," are among the sources courts should look to in assessing the reasonableness of governmental action. *Id.* Since Sergeant Culver's inquiries were forbidden by Arkansas state law, we think that they were presumptively unreasonable.

Even if Sergeant Culver's inquiries were not presumptively unreasonable because of their illegality under Arkansas law, we see no basis for a conclusion that his questions were reasonably related to the purpose of the initial stop. In *United States v. Barahona*, 990 F.2d 412, 416 (8th Cir. 1993), we held that an officer who stopped a vehicle for a traffic violation was permitted to ask for the driver's license and to inquire about the driver's destination and purpose. These inquiries were

-4-

permissible in that case because they were "reasonably related to ascertaining" the reasons for the defendant's "erratic driving" and to averting dangers that he might pose to others on the road. *Id.* In contrast, Sergeant Culver's suspicionless inquiries about the goods in the defendants' truck, in our view, have almost no relation, if any, to determining whether defendants and their truck were in compliance, in the words of the statute, with regulations having to do with "safety of operations and equipment," Ark. Stat. Ann. § 23-13-217(c)(1). It is hard to see, moreover, how such suspicionless inquiries can be reasonably related to ensuring compliance with a regulatory scheme when the very scheme itself prohibits them.

Because Sergeant Culver's questions were unreasonable and because he had no reason to suspect criminal activity before asking them, his continued detention of the truck after the purpose of the stop had been satisfied violated the fourth amendment. Defendants' evasive responses to Sergeant Culver's inquiries for bills of lading and their painstaking attempts to explain why their truck had no goods might well have raised a reasonable suspicion of criminal activity. *Cf. United States v. Johnson*, No. 01-3010, 2002 WL 467183, at *1 - *4 (8th Cir. Mar. 27, 2002). But when these statements are excluded from the factual mix, as they must be because they were made in response to unreasonable questions, Sergeant Culver did not have a sufficient basis for detaining the truck: All he knew was that the truck had not been in service for a week and that it was from out of town. These facts are insufficient to give rise to a suspicion of criminal activity because they do not distinguish the defendants from "a very large category of presumably innocent travelers," *Reid v. Georgia*, 448 U.S. 438, 441 (1980) (*per curiam*).

In short, we are inclined to the view that what began as a regulatory stop, as a result of Sergeant Culver's unreasonable inquiries, turned into a stop for the purpose of general crime control. But the Supreme Court has warned that administrative stops must not be allowed to become pretexts for "general crime control" or occasions "for

the ordinary enterprise of investigating crime." *See City of Indianapolis v. Edmond*, 531 U.S. 32, 41-44, 47 (2000).

We are aware that the fact that Sergeant Culver violated the defendants' fourth amendment rights by detaining their truck does not necessarily mean that the evidence that was seized from it should be suppressed. Rather, the question in a case like this is " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963) (quoting J. Maguire, *Evidence of Guilt* 221 (1959)).

We have held, for instance, conforming to *Wong Sun*, that a consent to a search may purge an illegal stop or detention of its primary taint and render the evidence uncovered pursuant to the search admissible. *See United States v. McGill*, 125 F.3d 642, 644 (8th Cir. 1997), *cert. denied*, 522 U.S. 1141 (1998); *United States v. Thomas*, 83 F.3d 259, 260-61 (8th Cir. 1996), *cert. denied*, 528 U.S. 1066 (1999). But in the present case the defendants explicitly refused consent, and there were no other events that intervened between the unconstitutional detention and the search that could purge the evidence seized from the taint of the initial illegality. The evidence, therefore, must be suppressed.

## II.

Because Mr. Walters's arguments regarding his sentence may be rendered moot by subsequent events, we decline to consider them.

## III.

For the reasons indicated, we reverse the district court's decision to deny the motion to suppress, and we remand to the court for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

       CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.