NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2393
_____

UNITED STATES OF AMERICA

v.

STANLEY NARCISSE,
                              Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 10-cr-00043-1)
District Judge: Honorable William W. Caldwell
_____

Submitted Under Third Circuit L.A.R. 34.1(a)

October 1, 2012

Before: FUENTES, FISHER and GREENBERG, *Circuit Judges*

(Opinion Filed: October 18, 2012)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*:

On January 31, 2010, a Pennsylvania State Trooper discovered over 1,000 kilograms of marijuana in a trailer in which Stanley Narcisse was riding as a passenger. After being indicted together with the driver, Eric Paul Emmanuel, Narcisse moved to suppress the contraband, arguing that it was discovered in violation of the Fourth

Amendment. The district court denied Narcisse's motion after an evidentiary hearing and Narcisse was subsequently convicted.

Narcisse claims ineffective assistance of counsel and appeals the district court's ruling on the motion to suppress. We conclude that Narcisse's claim of ineffective assistance is not properly raised on direct appeal and that the district court did not err in denying Narcisse's motion to suppress. We therefore affirm the district court's judgment, without prejudice to Narcisse's right to raise a claim of ineffective assistance of counsel on collateral attack under 28 U.S.C. § 2255.

## I.

### A.    Factual Background

Because we write primarily for the parties, we set forth only the facts relevant to our resolution of this appeal.

On January 31, 2010, Pennsylvania State Police Trooper Brian Livingston stopped Eric Paul Emmanuel on I-81 in Dauphin County, Pennsylvania after a tractor trailer he was operating failed to stop for a truck weigh station. Defendant-Appellant Narcisse was a passenger in the tractor. Trooper Livingston asked the defendants for their documentation, which included the bill of lading and their driver log books, and indicated he would conduct a "level two" inspection of the trailer as permitted under state law.

According to Trooper Livingston's testimony, which the district court found credible, his inspection of the defendants' documentation revealed certain anomalies and inconsistencies in both the bill of lading and the driver log books. Trooper Livingston's inspection of the trailer itself also revealed a number of violations. The officer issued a

2

citation for the bypass of the weigh station, and warnings for the additional violations found during the inspection. He then returned Emmanuel's documentation and told the defendants they were free to leave.

The parties disagree as to what happened next. The district court credited Trooper Livingston's testimony that he asked Emmanuel if they could talk further and that Emmanuel assented. Trooper Livingston testified that during this ensuing conversation Emmanuel and Narcisse both consented to the search of the trailer. The defendants, by contrast, agree that Livingston told them they were free to leave, but contend that he subsequently ordered them to "stay right there." They also assert that they refused to consent to the search of the trailer. The district court rejected their testimony.

Over 6,500 kilograms of marijuana were discovered during the search.

## B.    Proceedings in the District Court

On February 17, 2010, a grand jury returned a two-count indictment charging Emmanuel and Narcisse with (1) engaging in a conspiracy to distribute and possess with intent to distribute 1,000 kilograms or more of marijuana in violation of 21 U.S.C. § 846, and (2) actual distribution and possession with intent to distribute 1,000 kilograms or more of marijuana in violation of 21 U.S.C. § 841(a)(1). The indictment alleged that the criminal conspiracy occurred primarily within the Middle District of Pennsylvania.

After Narcisse and Emmanuel filed a joint motion to suppress the evidence obtained during the January 31, 2010 stop, the district court conducted an evidentiary hearing. Trooper Livingston and the defendants testified as detailed above. The district court denied the joint motion, finding Trooper Livingston's account of the events credible

3

and rejecting the defendants' version. Specifically, the district court found that the coercive nature of the encounter ended when Trooper Livingston returned Emmanuel's documentation, and that consent to search the trailer was thereafter voluntarily obtained.

On August 25, 2010, the Government filed a notice seeking to introduce evidence of other crimes under Fed. R. Evid. 404(b). Specifically, the Government sought to introduce evidence that, on May 13, 2009, a tractor trailer operated by Narcisse had been stopped by law enforcement officials in Arizona and was found to contain approximately 1,000 pounds of marijuana. On September 1, 2010, the grand jury issued a superseding indictment against Emmanuel and Narcisse adding a new charge for interstate transportation of stolen property in violation of 18 U.S.C. § 2314, and alleging that the criminal activity charged also occurred within the State of Arizona. Narcisse's attorney did not make any motion on the record with respect to the evidence obtained in Arizona, or the superseding indictment, and opposed attempts by the government to delay the trial date in light of the superseding indictment.

Both defendants pled not guilty and were tried jointly. Narcisse took the stand and repeatedly testified that he was responsible for the offenses charged. Narcisse's attorney then waived his closing argument. The jury convicted Narcisse on all counts, and he was sentenced to 188 months in prison. This appeal followed.

## II.

### A.     Ineffective Assistance of Counsel

Narcisse first argues that his trial counsel was ineffective for (a) not moving to suppress the marijuana seized in the Arizona case, (b) not attacking the superseding

4

indictment or seeking a continuance of the trial date, (c) failing to counsel Narcisse to accept a guilty plea offer that purportedly would have resulted in a lower sentence, (d) permitting Narcisse to admit that he was guilty, and (e) waiving his closing argument.

Subject to certain narrow exceptions, it is well settled that we do not entertain claims of ineffective assistance of counsel on direct appeal. *Gov't of Virgin Islands v. Lewis*, 620 F.3d 359, 371 (3d Cir. 2010) (citing *United States v. McLaughlin*, 386 F.3d 547, 555 (3d Cir. 2004)). "The rationale underlying this preferred policy is that oft-times such claims involve allegations and evidence that are either absent from or not readily apparent on the record." *United States v. Gambino*, 788 F.2d 938, 950 (3d Cir. 1986).

We have carefully reviewed the record and conclude that Narcisse's ineffective assistance of counsel claims do not fall within any cognizable exception to this rule.

**B.     Motion to Suppress**

Narcisse also argues that the district court erred in denying the motion to suppress the marijuana. In reviewing a denial of a motion to suppress, we review the district court's factual findings for clear error and *de novo* the application of the law to the facts. *United States v. Lafferty*, 503 F.3d 293, 298 (3d Cir. 2007). We will accept the court's factual findings so long as "the [trial] court's account of the evidence is plausible in light of the record viewed in its entirety." *United States v. Marcavage*, 609 F.3d 264, 285 (3d Cir. 2010) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)).

We find no error in the district court's determination that both Emmanuel and Narcisse actually consented to Trooper Livingston's search of the trailer. The testimony that the defendants had cooperated with the officer throughout the encounter and the

5

consistency of Trooper Livingston's testimony more than amply support the district court's finding. We reject Narcisse's contention that it is implausible to believe that someone would consent to a search knowing that contraband would be found.

Narcisse also argues that the consent was tainted because it was obtained during an unlawful seizure, namely, during the conversation between the defendants and Trooper Livingston that occurred after the officer issued the citation, returned Emmanuel's documents, and told the defendants they were free to leave.

An officer's interrogation of a suspect during a stop must be related in scope to the purposes of the stop itself. The Fourth Amendment requires that questioning cease once the issue for which the officer initiated the encounter has been resolved. *See, e.g.*, *United States v. Wilson*, 413 F.3d 382, 386-87 (3d Cir. 2005). There are two exceptions to this rule. First, there is no seizure if the conversation is voluntarily extended. *See United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003). Second, "an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation." *Id.* (citation omitted). Both exceptions are applicable here.

Trooper Livingston testified that he asked Emmanuel if he would answer additional questions after he returned Emmanuel's documents, and that Emmanuel said that he would. The district court found his testimony credible. Accordingly, the court correctly concluded that the "custodial nature of the stop ended when the trooper returned the papers to Emmanuel." Supp. App. 172. We find no clear error in this determination.

Alternatively, Trooper Livingston's credible testimony more than established that

6

he had reasonable suspicion to believe that criminal activity, aside from the original traffic violation, was afoot. This includes aspects of the bill of lading that in his experience Trooper Livingston found unusual, and inconsistencies in Narcisse's driver log books. Thus, although the reasons for the original detention ceased to justify interrogation of Emmanuel and Narcisse once the citations were issued, Trooper Livingston still had reasonable suspicion to continue the interrogation. *See, e.g.*, *Givan*, 320 F.3d at 458-59 (reasonable suspicion to extend conversation existed because officer found suspicious truck driver's activities as reflected in his documentation).[1]

Finally, even if Narcisse were correct that the extended interrogation constituted an unlawful seizure, the taint on the consent that resulted from that conversation would be removed if such consent was obtained voluntarily under the circumstances. To make this determination, we consider "the temporal proximity of the illegal detention and the consent, any intervening circumstances, and, particularly, the purpose of the flagrancy of the officer's unlawful conduct." *United States v. McSwain*, 29 F.3d 558, 562 (10th Cir. 1994) (citation omitted). Here, the district court's finding that the consent was obtained voluntarily supports the conclusion that Trooper Livingston's conduct was not unlawful.

Indeed, the record amply supports the district court's conclusion that consent was voluntary. As discussed, the defendants were told that they were free to leave, they

---

[1] Narcisse's asserts that the facts of *United States v. Belcher*, 288 F.3d 1068, 1069-70 (8th Cir. 2002), where the court reversed the district court's denial of a motion to suppress, are "similar" to the facts of this case. But, in *Belcher* the court found that the trooper's request for the bill of lading occurred in violation of Arkansas law, which required reasonable belief that the truck was being operated in violation of regulations before the bill of lading could be requested. Here, defendants do not contend that Trooper Livingston was not entitled to request the bill of lading.

cooperated with Livingston throughout the encounter, and, as the district court noted, there was no indication from the age, education, or intelligence of the defendants that they were unable to understand the situation. *See Wilson*, 413 F.3d at 388.

Therefore, even if we were to conclude that the continued interrogation was unlawful, we can ascertain no error in the district court's determination that the consent was voluntarily obtained, and thus free from the taint of that seizure.

## III.

For the foregoing reasons, we will affirm the judgment of the district court.